FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 JUN 16 A 11: 22

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR
DISTRICT OF MARYLAND, NORTHERN DIVISION

MAZIE JENNINGS, et al.,       *

    Plaintiffs,       *

    v.       *     CIVIL NO.: WDQ-11-0092

      *

RAPID RESPONSE DELIVERY, INC.,
et al.,       *

    Defendants.       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Mazie Jennings, Trent Miles, and John Ziglar ("the Plaintiffs") sued Rapid Response Delivery, Inc. ("Rapid Response") and Maryland Truck Tire Services, Inc. ("Maryland Tire") for violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and Maryland wage and hour laws, and for breach of contract and money had and received. For the following reasons, Maryland Tire's motion to dismiss and amended motion to dismiss will be granted in part, and denied in part.

I. Background[1]

The Plaintiffs were employed as drivers for Rapid Response, a Maryland corporation that provides delivery and courier services. Amend. Compl. ¶¶ 1-3, 12-14. Beginning in spring

---

[1] For the motion to dismiss, the well-pled allegations in the Plaintiffs' amended complaint are accepted as true. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

2009, they worked exclusively for Maryland Tire "on assignment from Rapid Response." *Id.* ¶¶ 1-3, 46. Maryland Tire delivers tires to wholesale customers in Maryland and other states, including Virginia. *Id.* ¶ 15.

Shortly after she was assigned to work for Maryland Tire, Rapid Response told Jennings that she would be "required to work from 8 a.m. to 5 p.m., or nine hours per day," and that her wages and hours were set "pursuant to a contract" between Rapid Response and Maryland Tire. *Id.* ¶¶ 20-21. While assigned to Maryland Tire, Jennings was "refused . . . meal or rest periods" and "regularly worked more than forty hours per week" but "was not paid the full amount of overtime wages due." *Id.* ¶¶ 23-25. Jennings complained to Rapid Response and Maryland Tire, and in January 2010, Rapid Response told Jennings that "Maryland Tire no longer wanted her services." *Id.* ¶¶ 26-29. Rapid Response "refused to offer [Jennings] another position as a route driver" and terminated her. *Id.* ¶ 29.

Miles began working for Rapid Response as a dispatcher in 2008. *Id.* ¶ 32. He dispatched drivers for Maryland Tire's predecessor, Mr. Tire. *Id.* He continued in this job after Mr. Tire became Maryland Tire. *Id.* Maryland Tire told Miles that his hours were "7:30 a.m. to 5 p.m.," and Miles "worked significant amounts of overtime." *Id.* ¶¶ 33, 40. Maryland Tire refused to provide Miles with meal or rest breaks, and he was

not paid all overtime wages owed. *Id.* ¶¶ 36-38. Ziglar was assigned as a driver for Maryland Tire and required to regularly work more than 40 hours per week. *Id.* ¶¶ 50, 54. Maryland Tire refused to provide him with breaks and he has not been paid overtime wages. *Id.* ¶¶ 53-55.

The Plaintiffs allege that Rapid Response and Maryland Tire are "joint employers," and the Plaintiffs' work "benefitted each Defendant as part of . . . an agreement between [the] Defendants to share workers." *Id.* ¶ 75. They state that Maryland Tire "retain[ed] the ability to fire the[m]" while they were assigned to Maryland Tire, and Maryland Tire "controlled the[ir] wages through [its] contracts [with Rapid Response]." *Id.* ¶¶ 64-65. Maryland Tire also controlled the "number and order" of deliveries the Plaintiffs made, and required them to report to Maryland Tire at the end of each day and record their mileage after each delivery. *Id.* ¶¶ 52-60.

On January 11, 2011, the Plaintiffs sued Rapid Response and Maryland Tire for violating the FLSA and Maryland wage and hour laws, breach of contract, and money had and received. ECF No. 1. On March 4, 2011, Maryland Tire filed its motion to dismiss. ECF No. 7. On March 25, 2011, the Plaintiffs filed an amended complaint. ECF No. 13. On March 31, 2011, Maryland Tire filed its amended motion to dismiss. ECF No. 14.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 557). The complaint must

4

not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B. Maryland Tire's Motion

1. FLSA Claims

Counts I & II of the amended complaint allege that Rapid Response and Maryland Tire violated the FLSA by (1) failing to pay overtime compensation and minimum wages, and (2) retaliating against Jennings for complaining about the FLSA violations. Amend. Compl. ¶¶ 84, 87-90. Maryland Tire argues that the FLSA claims against it must be dismissed because it was not the Plaintiffs' employer under the FLSA. Def.'s Mot. to Dismiss 3.

The FLSA was enacted to protect "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Benshoff v. City of Virginia Beach,* 180 F.3d 136, 140 (4th Cir. 1999) (*quoting Tenn. Coal. Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944)). It is "remedial and humanitarian in purpose" and "should be broadly interpreted and applied to effectuate its goals." *Id.* (internal citation and quotation marks omitted). The Act mandates that employers pay a minimum wage to covered

5

employees and pay overtime for each hour worked in excess of 40 per work week. 29 U.S.C. §§ 206(a)(1), 207(a)(1).

To state an FLSA claim, the plaintiff must allege facts sufficient to establish the existence of an employer-employee relationship. *See Benshoff,* 180 F.3d at 140. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1).

An FLSA employee may be employed by more than one employer at the same time. *Schultz v. Capital Int'l Sec. Inc.,* 466 F.3d 298, 305 (4th Cir. 2006). In such a joint employment relationship, all employers are jointly and severally liable for FLSA violations. *Jacobsen v. Comcast Corp.,* 740 F. Supp. 2d 683, 688 (D. Md. 2010). "[W]hether or not a joint employment relationship exists is not determined by application of any single criterion, but rather the entire relationship is to be viewed in its totality." 29 C.F.R. § 825.106(b)(1).

Under FLSA regulations, when an employee "performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally . . . exist[s]" if: (1) "there is an arrangement between the employers to share the employee's services as, for example, to interchange

employees;" (2) "one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee;" or (3) "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b).

Courts also examine the "real economic relationship" between the employee, employer, and putative joint employer to determine whether there is a joint employment relationship. *Schultz,* 466 F.3d at 306. This test "is intended to expose outsourcing relationships that lack a substantial economic purpose, but it is manifestly not intended to bring normal strategically oriented contracting schemes within the ambit of the FLSA." *Jacobsen,* 740 F. Supp. 2d at 689.

Four factors usually govern the inquiry: (1) authority to hire and fire employees, (2) authority to supervise and control work schedules or employment conditions, (3) authority to determine the rate and method of payment, and (4) maintenance of employment records. *Bonnette v. Cal. Health & Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir. 1983). Courts have also considered:

7

> (1) whether [the joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [contractor] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; [and] (5) . . . whether plaintiffs worked exclusively or predominantly for the [joint employer].

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003)(*citing Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724-25 (1947)).

Every factor need not weigh against joint employment to find that the putative joint employer is not governed by the FLSA; rather, the court must "base its decision upon the circumstances of the whole activity," *Schultz,* 466 F.3d at 306, and assess "the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the worker to that employer," *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003).

The Plaintiffs argue that they have shown a joint employment relationship through their allegations that (1) Rapid Response had a contractual relationship to assign drivers to Maryland Tire for its delivery and distribution needs, (2) the contract required that the Plaintiffs exclusively serve Maryland Tire, (3) Rapid Response set the Plaintiffs' wages and hours

8

based on their contract with Maryland Tire, and (4) Rapid Response would terminate drivers at Maryland Tire's request. Pls.' Opp'n 2-3, 11-12. They argue that their allegations are similar to those held sufficient to show joint employment in *Deras v. Verizon Md., Inc.*, 2010 WL 3038812 (D. Md. July 30, 2010).[2] *Id.* 12-13. Maryland Tire argues that this case is similar to *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762 (D. Md. 2008),[3] in which the court granted the putative joint employer's motion to dismiss. Def.'s Mot. to Dismiss 4-7.

---

[2] In *Deras*, the plaintiffs were directly employed by Utilities Maldonado, Inc. to install underground fiber optic cables for Verizon under an agreement between Utilities Maldonado and Verizon. 2010 WL 3038812 at *1. The plaintiffs sufficiently alleged Verizon's joint employer status by showing that (1) "they were hired by [Utilities Maldonado] for the exclusive purpose of laying Verizon's fiber optic cable," (2) "they were monitored, and occasionally directed, by Verizon supervisors," and (3) before they were permitted to work, they were required to attend Verizon's safety training. *Id.* *5-6. Although Utilities Maldonado "directly" controlled their schedules and assignments, "Verizon at least exerted indirect control over the time and manner in which their work was done." *Id.* at *7. The allegations were sufficient to survive the motion to dismiss "[c]onsidering the expansive definitions of 'employer' and 'employee' prescribed by the FLSA." *Id.* *8.

[3] The *Quinteros* plaintiffs, who were employed by Sparkle Cleaning, performed janitorial services for Regal Cinemas. 532 F. Supp. 2d at 765. When Regal Cinemas needed cleaning services, it contacted Sparkle, which contacted the plaintiffs "to see if they were interested and available to work." *Id.* The plaintiffs usually "dr[ove] Sparkle's vehicles to [the] movie theaters" and alleged that Regal's employees "direct[ed] [their] cleaning activities." *Id.* In dismissing the FLSA claim against Regal Cinemas, Judge Williams held that joint employment requires "an 'economic reality' or dependency between the employee and the putative [joint] employer," and there was no

"[E]xtensive supervision weighs in favor of joint employment only if it demonstrates effective control of the terms and conditions of the plaintiff's employment." *Zheng*, 355 F.3d at 74-75. Here, like *Deras*, the Plaintiffs' allegations demonstrate Maryland Tire's control over the terms and conditions of their employment. Maryland Tire prescribed the Plaintiffs' hours and refused to provide the Plaintiffs with meal and rest breaks. Amend. Compl. ¶ 40. Further, the Plaintiffs have alleged that Maryland Tire set their wages indirectly through its contract with Rapid Response. *Id.* ¶ 21.[4]

Additionally, unlike *Quinteros*, the Plaintiffs here have alleged that they "depend[ed] solely" on the business of Maryland Tire for their work. Rapid Response required the

---

such dependency between the plaintiffs and Regal Cinemas. *Id.* at 775. Sparkle, not Regal Cinemas, sent the plaintiffs to work; some of that work "just happen[ed] [to be] at Regal." *Id.* The plaintiffs did not "depend solely on the business of movie theaters for their work, but rather depend[ed] on the business generated from Sparkle who direct[ed] them to work at places like Regal Cinemas," and their allegation that Regal Cinema employees had directed their work was "nothing short of a conclusory statement unsupported by sufficient facts." *Id.*

[4] The Plaintiffs' allegations that Maryland Tire controlled the number and order of deliveries and required them to record their mileage after each delivery shows "supervision [that] is perfectly consistent with a typical, legitimate subcontracting arrangement," which is not indicative of joint employment. *See Zheng*, 355 F.3d at 75 ("supervision with respect to contractual warranties of quality and time of delivery have no bearing on the joint employment inquiry."); *Moreau v. Air France*, 356 F.3d 942, 950-53 (9th Cir. 2004)(general contractor was not a joint employer of subcontractor's employees when instructions given to the employees concerned performance of the subcontract).

Plaintiffs to work exclusively for Maryland Tire, and—like Jennings—they could be terminated from the Maryland Tire assignment at Maryland Tire's request. *Id.* ¶¶ 29-30, 46. In Jennings's case, Rapid Response "refused to offer her another position." *Id.* ¶ 29. As explained in *Zheng,* whether the employee worked "exclusively or predominately" for the putative joint employer is relevant to the "economic reality" of the employment relationship because "a subcontractor's apparent dependence on particular contractors [may] translate[] into functional control by those contractors over the subcontractor's employees." *Zheng,* 355 F.3d at 75 n. 12. Accepting the Plaintiffs' well-pled allegations as true, it appears that Maryland Tire exercised "functional control" over them because Maryland Tire could determine their continued employment at Rapid Response. *See id.*

The amended complaint alleges sufficient facts to show that Maryland Tire may have been a joint employer under the FLSA. At this "nascent" stage of the litigation, that is all that is required. *Deras,* 2010 WL 3038812, at *9. The motion to dismiss will be denied as to the FLSA claims.

2. Maryland Wage and Hour Law Claim

Count III of the amended complaint alleges that Rapid Response and Maryland Tire violated the Maryland Wage and Hour Law ("MWHL"), Md. Code. Ann. Lab. & Empl. §§ 3-401, *et seq.,* by

11

failing to pay the Plaintiffs' overtime wages. Amend. Compl. ¶¶ 91-95. Maryland Tire argues that this claim should be dismissed because the allegations do not show that it is an employer under the MWHL. Def.'s Mot. to Dismiss 3.

Like the FLSA, the MWHL requires that "employers pay [employees] the applicable minimum wage" and "an overtime wage of at least 1.5 times the usual hourly wage for each hour over 40 that the employee works during one workweek." *Friolo v. Frankel,* 373 Md. 501, 513, 819 A.2d 354 (2003). The MWHL "mirror[s] . . . the federal law," and the Plaintiffs' MWHL claim "stands or falls on the success of their claim under the FLSA." *Turner v. Human Genome Sci., Inc.,* 292 F. Supp. 2d 738, 744 (D. Md. 2003). As the Plaintiffs have alleged Maryland Tire's joint employer status under the FLSA, they have also alleged its joint employer status under the MWHL. *See id.* The motion to dismiss will be denied as to Count III.

      3. Maryland Wage Payment and Collection Law Claim

Count IV alleges that Rapid Response and Maryland Tire violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code. Ann. Lab. & Empl. §§ 3-501, *et seq.*, because they did not pay all wages on a timely basis. Amend. Compl. ¶¶ 96-104. Maryland Tire argues that this claim must be dismissed because it "never undertook to pay wages to the Plaintiffs." Def.'s Mot. to Dismiss 8.

The MWPCL "requires employers to establish regular pay periods" and "prohibits employers from making unauthorized deductions." *Friolo,* 373 Md. at 513-14. An MWPCL claim against a joint employer cannot be sustained if the plaintiff fails to allege that the joint employer was involved in payment of his wages. *See Deras,* 2010 WL 3038812, at *8 (dismissing MWPCL claim because "there [were] no specific allegations that Verizon was in anyway involved in paying Plaintiffs or withholding their wages, and all of the well-pled allegations as to this point suggest that it was not"). Here, the amended complaint does not allege that Maryland Tire was responsible for, or involved in, establishing pay periods or making deductions. Accordingly, the MWPCL claim against Maryland Tire will be dismissed.

4. Breach of Contract Claim

Count V alleges that Maryland Tire breached a contract by "refusing to pay [the] Plaintiffs the full amount of their contractually promised wage" of $135 daily. Amend. Compl. ¶¶ 106-110. Maryland Tire argues that this claim should be dismissed because the well-pled allegations do not show that it ever promised to pay the Plaintiffs $135 per day. Def.'s Mot. to Dismiss 8-9. The amended complaint alleges that Rapid Response, not Maryland Tire, promised the daily wage, and the Plaintiffs never negotiated their pay with Maryland Tire. *See*

Amend. Compl. ¶¶ 18-22, 135. The breach of contract claim against Maryland Tire will be dismissed.

        5. Money Had and Received Claim

Maryland Tire argues that Count VI, which alleges a claim for money had and received under Maryland law, should be dismissed for failure to state a claim. Money had and received is analogous to an unjust enrichment or restitution claim. *Benson v. State,* 389 Md. 615, 652-53, 887 A.2d 525 (Md. Ct. Spec. App. 2005). The claim lies "whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not . . . be allowed to retain." *Id.*

The Plaintiffs' money had and received claim is based on "certain deductions [taken] from [their] pay, including [a] $5 administrative fee/and or weekly fees of approximately $29 for disability insurance," which the Plaintiffs "did not voluntary consent to." Amend. Compl. ¶¶ 114-15. Whether these allegations state a claim for money had and received against Rapid Response, they are insufficient to state a claim against Maryland Tire. As discussed above, it is clear from the well-pled allegations that Rapid Response was responsible for paying the Plaintiffs, and no allegations show that Maryland Tire "obtained possession" of the alleged wrongful deductions. *See* Amend. Compl. ¶¶ 14, 22-26. Maryland Tire's motion to dismiss will be granted on this claim.

14

III. Conclusion

For the reasons stated above, Maryland Tire's motion to dismiss and amended motion to dismiss will be granted in part, and denied in part.

_____6/15/11_____            _____
Date                                       William D. Quarles, Jr.
                                                      United States District Judge